ROBERTSON, Justice:
Richard D. Smith brought suit against Ulysses W. Caves in the Circuit Court of the Second Judicial District of Jasper County for personal injuries sustained in an automobile collision when Smith attempted to drive his pickup truck southward from his private driveway to the south lane of State Highway 18, and his truck was struck by Caves’ Chevrolet as he drove westerly on Highway 18.
Smith, in his declaration, asked for $40,-000.00 damages; Caves answered and coun *690 terclaimed, asserting that he was entitled to $15,000.00 damages from Smith. The jury returned a verdict in Smith’s favor for $30,000.00. Caves appeals.
Smith testified that on Sunday morning, February 8, 1970, about 10:00 o’clock, he drove his pickup truck in a southerly direction to a point where his private driveway enters State Highway 18, which is a two-lane paved highway running east and west. Smith testified that he stopped his truck, looked first to the west and then to the east, and seeing no car approaching drove south to the south lane of Highway 18. As Smith angled his truck to the east, and before he had gotten completely straight in the south lane of Highway 18, Defendant Caves, proceeding west on Highway 18, ran into the left front of Smith’s truck.
Caves stated that when he was about 250 feet from the driveway he saw Smith approaching the highway in his pickup truck. Caves testified:
“I took the precaution of getting on my brakes because it didn’t look like he had any notion to stop. In other words, as a precautionary measure I got onto my brakes.”
Caves said that Smith entered the highway when he, Caves, was not more than 20 feet away, and that he immediately applied his brakes and turned to the left in an attempt to go around Smith and avoid an accident. Caves located the point of impact in this way:
“I had reached center of the highway, my car was just about exactly in the center or over the center line of the highway, and that’s where the accident occurred.”
At the time he touched his brakes, Caves estimated his speed at about 55 miles an hour and, at the point of impact, at about 40 miles an hour. The right front of the Chevrolet hit the left front of the pickup truck, knocking the front end of the truck around to the west. When it came to rest, the truck was on the north side of Highway 18, headed west; and Caves’ Chevrolet was facing northwest about midway across Highway 18. Both vehicles were about 10 feet west of the point where the Smith driveway enters Highway 18.
Smith suffered multiple contusions and abrasions, had several ribs broken close to the spine, and his left lung was punctured in several places, resulting in air escaping into his body and causing him to swell up from head to foot almost beyond recognition. Caves suffered several contusions and abrasions and broke his collarbone.
In his Assignment of Errors, Caves complained that: the verdict of the jury was against the great weight of the evidence; the court erred in overruling his motion for a directed verdict; the court erred in admitting opinion evidence of witness Eu-banks; the court erred in granting two instructions for the plaintiff; and finally that the verdict of the jury was so excessive as to evince bias, passion and prejudice on the part of the jury.
Sections 8197 and 8198, Mississippi Code 1942 Annotated (1956) provide:
“(a) The driver of a vehicle shall stop as required by this Act at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from, said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.
“(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautionsly, yielding to vehicles no [not] so obliged to stop which are within the intersection or approaching so closely *691 as to constitute an immediate hazard, but may then proceed.” § 8197. (Emphasis added).
“The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway.” § 8198.
In Jones v. Carter, 192 Miss. 603, 7 So.2d 519 (1942), and again in Junakin v. Kuykendall, 237 Miss. 255, 114 So.2d 661 (1959), we said that the unqualified language of § 8198; “shall yield the right-of-way to all vehicles approaching on said highway,” was limited by the language of § 8197. In Jones v. Carter, we expressed our interpretation of these two statutes in this way:
“In other words, the statute of 1938, supra, [Sec. 8197, Code of 1942], does not require the driver of a vehicle who has already entered onto an intersection with a through highway to yield the right-of-way to an approaching vehicle which has neither entered the intersection nor approached so closely thereto from said through highway as to constitute an immediate hazard. This is likewise true as to a vehicle about to enter or cross a through highway from a private road or driveway.” (Emphasis added). 192 Miss. at 609, 7 So.2d at 520.
Further light was shed on this particular situation when we said in Junakin:
“In discussing the duty of a motorist approaching a highway which is protected by stop signs to yield the right of way, the text writer in 5A Am.Jur. 433, Automobiles and Highway Traffic, par. 327, says:
‘The duty to yield the right of way does not mean that the driver on the unfavored highway must refrain from crossing the favored thoroughfare whenever another vehicle is approaching thereon regardless of how far distant. It is frequently provided by statute that a motorist approaching a highway which is protected by stop signs must yield the right of way to vehicles approaching so closely as to constitute an immediate hazard, the question whether a particular vehicle constituted such a hazard in a particular case being one for the jury.’ ” (Emphasis added). 237 Miss. at 263, 114 So.2d at 665.
The facts were disputed in the case at bar and, just as was said in Junakin, it was a question for the jury to decide. The trial court was correct in not directing a verdict for Caves.
Caves contends that the physical location of the two vehicles after the collision proves beyond any doubt that Smith crossed in front of him when he (Caves) was so close that he could not possibly avoid the accident.
We said in Hagan Storm Fence Co. of Mississippi v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963), and Lynch v. Suthoff, 220 So.2d 593 (Miss.1969), that the position of the vehicles after impact was just another bit of evidence for the jury to consider in arriving at its verdict. We further said in Hagan that the jury should not be hampered in its deliberations by the opinion of an accidentologist, and in Lynch by the opinion of a city policeman, who were not eyewitnesses.
Caves complains that Jack Eubanks, an off-duty Mississippi Highway Patrolman who lived across the highway from Smith and who was an eyewitness, should not have been allowed to state his opinion that Caves could possibly have avoided the accident if he had stayed in his north lane instead of turning across the center line into the south lane of the highway. While it might have been error, we feel that inasmuch as Eubanks was an eyewitness and had testified before giving his opinion as to what he actually saw, that the admission of his opinion was harmless error.
Caves next contends that two instructions for the plaintiff were erroneously granted. We find no particular fault *692 with these two instructions: one presented plaintiff’s theory of the case based on testimony in the record, and the other outlined the elements of damages that could be considered. While it is true that the instruction on damages ends with some rather general language, this language was preceded by an enumeration of the specific elements of damages that could be considered. Smith was granted five instructions, but Caves was granted thirteen, including a sudden emergency instruction and others stressing acts of negligence on Smith’s part which would have absolved Caves of any blame if the jury had fully believed his testimony. Considering the instructions as a whole, we feel that the jury was properly instructed as to the law applicable to the differing theories of liability advanced by the litigants under the peculiar facts of this case.
Finally, Caves complains of the amount of the verdict. While $30,000.00 is more than we might have awarded, we cannot say with any assurance that this amount is so excessive as to evince bias, passion and prejudice on the part of the jury, nor is it so excessive as to shock the conscience of the Court. The injuries were very serious and painful. For three days Smith was on the “very critical” list; the doctors didn’t know whether he would live or die. For three or four more days he was on the “critical” list. He was hospitalized for 22 days and not able to return to work for three months. He suffered a great deal. He worked as a laborer; all he knew was carpentry work. There was testimony that he could not lift anything heavy and was permanently incapacitated in this regard.
After carefully considering all questions raised and all errors assigned, we are of the opinion that the judgment of the trial court should be affirmed.
Affirmed.
RODGERS, P. J., and PATTERSON, INZER and SMITH, JJ., concur.